## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROL McGANTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: CIV-14-789-C |
| | ) | |
| (1) REHME MFG, INC., an Oklahoma | ) | |
| limited liability company, and | ) | |
| (2) MARK REHME, SR., Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Carol McGanty, ("Plaintiff") for her causes of action against Defendants

Rehme MFG, Inc., ("RMI") and Mark Rehme, Sr. ("Rehme"), alleges and states:

### The Parties

1.      At all relevant times, Plaintiff was and now is a resident of Stephens

County, State of Oklahoma.

2.      At all relevant times herein mentioned, Defendant RMI was and now is an

Oklahoma limited liability company, located and operating out of the County of

Stephens, State of Oklahoma.   Defendant Rehme was and now is a resident of

Stephens County.

### Jurisdiction and Venue

3.      This action arises and jurisdiction is proper under the provisions of 42

U.S.C.A. §2000e-5(f)(3), 28 U.S.C. §1331, and 28 U.S.C. §1367.

4.      Venue is proper in the Western District of Oklahoma in that the employment practices hereinafter alleged to be unlawful were committed in the Western District of Oklahoma pursuant to 28 U.S.C. Section 1391(c).

## FACT ALLEGATIONS

5.      Defendant RMI is a manufacturing business that builds primarily aluminum products such as trailers for animals and cargo and Toter homes, as well as control houses and buildings.  It also builds vans and trucks for use in oil and gas fracking services.

6.      Plaintiff began working with RMI in approximately 2010, and for the last two (2) years of her employment, she was working directly under Defendant Rehme.

7.      As part of her job duties, she would perform tasks for Rehme and worked as his right-hand person.  She would often run the office when Rehme was travelling, and would take care of some of the administrative tasks for the business.  She had use of the company credit card and was able to drive the company car.  In fact, Rehme told Plaintiff that she could use the credit card to help with personal expenses, if she needed assistance.

8.      RMI is a family-owned business, and Rehme treated Plaintiff like a part of the family.  Likewise, Plaintiff looked up to him as a father figure.

9.      In 2012, Plaintiff began dating Rehme's step-son.  According to information and belief, Rehme learned of this relationship over Memorial Day weekend

in 2013.   Upon return from the holiday, Rehme spoke to his step-son about the relationship and expressed upset with the two (2) of them together.

10.    Soon thereafter, Rehme called Plaintiff and wanted to set up a meeting to talk to her.  He asked about her relationship with the step-son, to which Plaintiff confirmed.  He then confessed to Plaintiff that he was in love with her and had been in love with her for a long time, although he was married at the time.  Plaintiff told him that she did not think of him that way and, instead, considered him to be more like a father.

11.    Rehme became upset that Plaintiff did not want to end her relationship with the step-son and start a relationship with him.  He said he did not love his wife and wanted to be with Plaintiff.

12.    This confession was shocking to Plaintiff and she became extremely stressed and physically ill because of the situation.  For the next few weeks, Plaintiff took various days off work because of the stress and awkward situation with Rehme.

13.    At times when she was not at the office, Rehme texted Plaintiff saying that he hoped she had "sweet dreams" before going to bed, and that he wanted to meet with her.

14.    Plaintiff did agree to meet with Rehme again, outside the workplace, where Rehme told her that his step-son did not love her like he did, and that he wanted

a life with her.  Rehme showed Plaintiff his income tax returns as a way to start a relationship, telling Plaintiff she'll never have to worry about anything.

15.    As a result of Rehme's advances, Plaintiff's work suffered and the workplace environment changed.  Although Rehme's confession was not common knowledge, other employees could see that something was different with Plaintiff.

16.    In mid-June, Plaintiff met with Tena Rehme ("Tena"), Rehme's daughter, and another employee, Sherry, about the situation.  They indicated that Plaintiff needed to take time off, and whatever she needed, they would pay for it without it coming off of Plaintiff's paid time off leave time.  They decided that Plaintiff would come back after July 4th holiday.

17.    While Rehme had indicated he was sorry for confessing his love and that he wanted things to "go back to the way it used to be," he continued to talk to Plaintiff about personal issues unrelated to the workplace.

18.    Hoping that things would be better, Plaintiff was set to return on or around July 8, 2013.  While she did not believe her job was going to change upon her return, she learned that many of her responsibilities had been taken away, and she was moved out to the warehouse, where her job was to work with the load trucks.  Her company card was also taken, and she was accused of wrongfully using business monies.

19.     On July 9, 2013, Plaintiff received another text message from Rehme before coming to work stating that he was glad to see her back at work, and that she was missed.  This greatly stressed Plaintiff.

20.     Upon coming to the office, she was called to a meeting with Tena and Sherry in which she was essentially told that she was just going to have to get over the situation with Rehme.  When Plaintiff indicated that she might be able to if Rehme would not have contact with her, Tena stated that they had sought legal advice and that if Plaintiff signed a release and waiver, RMI would give her the value of her paid time off leave and not oppose unemployment.

21.     Plaintiff did not accept that arrangement, but took paid time off for the rest of the week.  She also went to a medical professional about her stress and anxiety and was placed on medical leave until July 22, 2013.

22.     Because she was not better at that time, Plaintiff received another doctor's note for leave until August 6.  She was also placed on stronger medication to deal with the stress and anxiety.

23.     Unfortunately, she was not able to return to the workplace because of the stress and anxiety caused by Rehme, and submitted her constructive discharge by letter dated July 26, 2013.

24.     Plaintiff went to the Equal Employment Opportunity Commission in January 2014, but the EEOC refused to take her charge of discrimination.  Ultimately,

she did file her charge on April 28, 2014 and thereafter, on April 29, 2014, she received

the Dismissal and Notice of Rights.

**FIRST CAUSE OF ACTION – VIOLATION OF TITLE VII
OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED,
FOR GENDER DISCRIMINATION AGAINST RMI**

25.     Plaintiff incorporates by reference paragraphs 1 through 24 as though set

forth in full herein.

26.     At all relevant times, Plaintiff was and is a female, and a member of a class

protected by Title VII of the 1964 Civil Rights Act, as amended.

27.     Defendant was, and now is an "employer" within the meaning of Title VII

of the 1964 Civil Rights Act, as amended, and did and now does employ more than 15

persons.

28.     Plaintiff's gender was a motivating and significant factor in her

constructive discharge.

29.     Defendant RMI created a hostile work environment for Plaintiff as a result

of Rehme's advances and the alteration of Plaintiff's job duties upon her return to the

workplace.   As a result, Plaintiff had no reasonable alternative but to leave the

workplace.

30.     As a direct and proximate result of Defendants' discriminatory treatment

and actions herein above alleged in violation of Title VII of the 1964 Civil Rights Act, as

amended, Plaintiff has suffered, and is now suffering, and will continue to suffer,

irreparable injury and economic loss, as well as damages for emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment of life.  Plaintiff seeks all of the relief afforded by Title VII of the 1964 Civil Rights Act, as amended.

31.    Plaintiff has complied with all of the administrative requirements prior to filing this action, and this action has been filed within ninety (90) days from the issuance of the letter by the Equal Employment Opportunity Commission of its Notice of Suit Rights.

WHEREFORE, Plaintiff demands and prays against Defendants as follows:

1. That a judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendants, and each of them, in violation of Title VII of the 1964 Civil Rights Act, as amended.

2. That Defendant be ordered to make Plaintiff whole by providing back pay, front pay, compensation for mental pain and suffering and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to reputation, and loss of enjoyment of life, and any and all other remedies authorized by Title VII of the 1964 Civil Rights Act, as amended, including, but not limited to, punitive damages.

3. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates Title VII of the 1964 Civil Rights Act, as amended.

4.   That Plaintiff be awarded her costs and expenses of this litigation, including reasonable attorney's fees, and expert witness fees; and

5.   That Plaintiff be granted such other legal and equitable relief as the Court may deem just and proper and in compliance with Title VII of the 1964 Civil Rights Act, as amended.

**SECOND CAUSE OF ACTION – FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL/EMPLOYMENT RELATIONSHIP AGAINST REHME**

32.   Plaintiff incorporates by reference herein Paragraphs 1 through 31 as though set forth in full.

33.   Defendant Rehme had knowledge of Plaintiff's employment relationship with RMI.

34.   Defendant Rehme acted outside the course and scope of his employment by intentionally, willfully and maliciously interfering with Plaintiff's employment contract, as fully set forth herein.

35.   Defendant Rehme's interference with Plaintiff's employment relationship was neither privileged nor justified, and he acted outside the course and scope of his employment when he professed his love for Plaintiff and willfully and maliciously engaged in the aforesaid acts of interference.

36.   As a direct result of Defendant Rehme's intentional interference, Plaintiff has suffered economic loss, emotional distress and mental anguish, humiliation,

embarrassment, loss of professional reputation, and lost enjoyment of life, all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

37.     Plaintiff further seeks punitive and exemplary damages against Defendant Rehme to punish him and to set an example for other like-situated supervisors to not engage in such scornful misconduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Rehme as follows:

(1)     For her actual damages in a sum in excess of $75,000.00, and in accordance with the proof at the time of trial;

(2)     For punitive and exemplary damages in an amount as determined by the jury at the time of trial;

(3)     For interest thereon as provided by law;

(4)     For her costs; and,

(5)     For such other and further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION – FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST REHME

38.     Plaintiff incorporates by reference herein Paragraphs 1 through 37 as though set forth in full.

39.     In professing his love for Plaintiff, and in his reaction to Plaintiff's denial of those advances, Defendant Rehme engaged in actions that were so extreme and

outrageous in the setting in which they occurred, as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

40.   Defendant Rehme intentionally and recklessly caused severe emotional distress to Plaintiff beyond that which a reasonable person could be expected to endure.

41.   As a direct result of Defendant Rehme's intentional infliction of emotional distress, Plaintiff has suffered economic loss, emotional distress and mental anguish, humiliation, embarrassment, loss of professional reputation, and lost enjoyment of life, all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

42.   Plaintiff further seeks punitive and exemplary damages against Defendant Rehme to punish him and to set an example for other like-situated supervisors to not engage in such scornful misconduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Rehme as follows:

(1)   For her actual damages in a sum in excess of $75,000.00, and in accordance with the proof at the time of trial;

(2)   For punitive and exemplary damages in an amount as determined by the jury at the time of trial;

(3)   For interest thereon as provided by law;

(4)   For her costs; and,

(5)   For such other and further relief as the Court may deem just and proper.

WARD & GLASS, L.L.P.

 s/Scott F. Brockman
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
Scott F. Brockman, OBA#19416
R. Ben Houston, OBA#14751
Barrett T. Bowers, OBA#30493
1821 E. Imhoff Road
Norman, Oklahoma 73071
(405) 360-9700
(405) 360-7902 (fax)
ATTORNEYS FOR PLAINTIFF

JURY TRIAL DEMANDED
ATTORNEYS' LIEN CLAIMED